## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

ERIC KRATZENBERG

v.                                      Case No. 24-cv-205-JL-TSM

NEW HAMPSHIRE SUPREME
COURT, et al.

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO DISMISS

Self-represented plaintiff, Eric Kratzenberg ("Kratzenberg"), brings this civil rights action against the New Hampshire Supreme Court ("NHSC") and its Chief Justice, Gordon MacDonald (the "Chief Justice"), in his individual and official capacities, claiming that defendants violated his constitutional and state law rights by declining to accept his appeal from a decision denying his petition to modify his child support and alimony obligations in a post-divorce domestic relations proceeding. The matter is before the undersigned magistrate judge for a Report and Recommendation on defendants' Motion to Dismiss Amended Complaint (Doc. No. 19) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In support of their motion, defendants argue that the court lacks subject matter jurisdiction over Kratzenberg's claims under the Rooker-Feldman doctrine, which "precludes federal jurisdiction over a challenge to a state court judgment to which the challenger was a party." Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009). They further argue that even if subject matter jurisdiction exists, the motion should be granted for failure to state a claim because defendants are immune from suit on the basis of sovereign and absolute judicial immunity. Kratzenberg opposes the motion. For all the reasons detailed herein, the district judge should grant defendants' motion to dismiss.

**LEGAL STANDARD**

**I.**     **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendants move to dismiss Kratzenberg's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). When faced with such a motion, the court's review is "similar to that accorded a [motion to dismiss] for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). The court must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Id. Additionally, the court may consider materials outside the complaint to the extent they shed light on the jurisdictional analysis. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) ("While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion"). Where, as here, the plaintiff is self-represented, "the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). However, the court is not required "to 'credit bald assertions, subjective characterizations, . . . problematic suppositions,' or 'empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts' in the complaint." Peterson v. United States, 774 F. Supp. 2d 418, 421 (D.N.H. 2011) (quoting Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998)).

"[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy, 45 F.3d at 522 (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). In this case, therefore, the burden of establishing subject matter jurisdiction lies with Kratzenberg.

## II.    **Motion to Dismiss for Failure to State a Claim**

Defendants also move to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Like a motion to dismiss under Rule 12(b)(1), a Rule 12(b)(6) motion to dismiss requires the court to "take the complaint's well-pled (*i.e*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor[.]"  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  The court is entitled to "augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  "To survive dismissal, . . . the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018) (quoting SEC v. Tambone, 597 F.3d 436, 437 (1st Cir. 2010)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged.'"  Office of Pub. Guardian v. Elliot Hosp., 626 F. Supp. 3d 520, 527 (D.N.H. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## BACKGROUND[1]

### *The Parties*

Plaintiff Kratzenberg is a nationally respected electrical engineer who resides in New Hampshire.  Doc. No. 15 at ¶ 16.  Defendant MacDonald serves as the Chief Justice of the NHSC.

---

[1] The background facts described herein, which are accepted as true for purposes of defendants' motion to dismiss, are based on the Corrected Amended Complaint for Declaratory, Injunctive & Compensatory Relief (Doc. No. 15) and the New Hampshire Supreme Court order dated February 20, 2024 (Doc. No. 19-2), which defendants submitted in support of their motion to dismiss.  In their Memorandum of Law in support of their motion, defendants cite the Amended Complaint for Declaratory, Injunctive & Compensatory Relief (Doc. No. 14), which was filed on November 22, 2024, rather than the Corrected Amended Complaint, which was filed on November 25, 2024.

Id. at ¶ 17.  Kratzenberg filed this action against the NHSC and the Chief Justice after the NHSC issued an order declining to accept Kratzenberg's mandatory appeal from a decision denying his petition to modify his child support and alimony obligations in a post-divorce domestic relations matter.  See Doc. No. 15 at ¶¶ 1-2, 23-24.  He asserts that the Chief Justice "is being sued for acting in his role as the chief administrator of the NHSC[,]" and he names the Chief Justice in both his individual and official capacities "as the chief judge and administrator of the [NHSC]."[2]  Id. at ¶¶ 1, 17.

### Kratzenberg's Appeal to the State Supreme Court

The events giving rise to this litigation began with the proceedings regarding Kratzenberg's no-fault divorce from his former spouse in or around 2021.  See id. at ¶¶ 3, 15.  Plaintiff alleges that in connection with his divorce proceedings, he gave his former spouse sole, unencumbered ownership of the couple's former family home, which sits on four acres of land and has an appraised value of approximately $400,000.  Id. at ¶ 13.  Additionally, the court overseeing the couple's divorce (the "Divorce Court") entered a judgment requiring Kratzenberg to pay his former spouse hundreds of thousands of dollars in alimony over a ten-year time period.  See id. at ¶¶ 3, 13-14, 23.  The Divorce Court based its decision regarding the alimony obligation on the state divorce statute in effect at the time, even though Kratzenberg claims "that his marriage contract with the former spouse was entered into by him under the explicit understanding that if he decided

---

Although the Corrected Amended Complaint corrects some of the paragraph numbering and contains some minor language changes to the heading of Count II and to Kratzenberg's Prayer for Relief, the alleged facts remain the same and there is no substantive distinction between the two versions of the complaint.  Therefore, this court has construed defendants' motion as a motion to dismiss the more recent, Corrected Amended Complaint.

[2] Although Kratzenberg named the Chief Justice in both his individual and official capacities, see Doc. No. 15 at ¶ 17, he alleges no facts describing the Chief Justice's individual conduct or distinguishing the Chief Justice's actions from those of the NHSC.

to seek a divorce it would be done under the explicit terms of the Divorce Statute active on the date of his entering his said marriage contract." <u>See</u> <u>id.</u> at ¶¶ 3-4.  According to plaintiff, the version of the divorce statute in effect at the time of his marriage called for alimony payments that were far less burdensome than the payments required under the version of the statute that was in effect at the time of his divorce.  <u>Id.</u> at ¶ 37.

In 2023, Kratzenberg suffered undefined "setbacks" that entitled him to a reduction of his alimony obligations under the terms of the Divorce Court judgment.  <u>Id.</u> at ¶ 14.  However, the Divorce Court denied plaintiff's request to modify his payments.  <u>Id.</u> at ¶ 22.  Accordingly, on January 16, 2024, Kratzenberg filed a notice of mandatory appeal pursuant to Rule 7 of the New Hampshire Supreme Court Rules (the "NHSC Rules").  <u>See</u> <u>id.</u> at ¶¶ 2, 23; Doc. No. 19-2.  He also paid the required appellate filing fee of $450.  Doc. No. 15 at ¶¶ 7, 11.

### *The Supreme Court's Denial of Plaintiff's Appeal*

On February 20, 2024, the NHSC issued an order rejecting plaintiff's mandatory appeal. As the NHSC order provided in substantive part:

> On January 16, 2024, Eric Kratzenberg filed a Rule 7 notice of mandatory appeal. The appeal is from a decision for a petition to modify child support and alimony filed in a post-divorce domestic relations matter.  Supreme Court Rule 3 excepts from the definition of "mandatory appeal" an appeal from a final decision on the merits, other than the first final order, issued on, or arising out of, a domestic relations matter filed under RSA Title XLIII (RSA chapters 457 to 461-A). Accordingly, this appeal is not a "mandatory appeal" under Rule 3.

> This is a discretionary appeal, and, therefore, the court has discretion to decline to accept the appeal or any question raised therein.  <u>See</u> Rule 7(1)(B).  Because the notice of discretionary appeal form provides more information than the notice of mandatory appeal form, Eric Kratzenberg may wish to refile the appeal on a notice of discretionary appeal form before the court screens the appeal to determine whether to accept or decline the case.  Accordingly, on or before March 1, 2024, Eric Kratzenberg <u>may</u> refile the appeal on a notice of discretionary appeal form.

The notice of discretionary appeal form (NHJB-2297-SUP) is available at https://www.courts.nh.gov/our-courts/supreme-court/forms.

Doc. No. 19-2.  Kratzenberg did not file a notice of discretionary appeal.  See Doc. No. 15 at ¶¶ 2, 23-25.  Therefore, he was unable to pursue his appeal.  See id.

### The Instant Litigation

Kratzenberg initiated this action against the NHSC and its Chief Justice on July 9, 2024. Doc. No. 1.  In his Corrected Amended Complaint ("Complaint"), which is the operative complaint in this case, Kratzenberg alleges that defendants' conduct relating to his appeal from the Divorce Court judgment violated his constitutional and state law rights.  Specifically, in Count I, plaintiff asserts that defendants' adoption of NHSC Rules 3 and 7, on which the NHSC relied in denying his mandatory appeal, violated his constitutional right to petition the court for appellate review. Doc. No. 15 at ¶¶ 20-30.  In Count II, he alleges that the enforcement of the New Hampshire divorce statute against him constituted an unconstitutional taking of his property without just compensation.  Id. at ¶ 32.  He also claims that the divorce statute violated his constitutional rights to due process and equal protection.  Id. at ¶ 34.  In Count III, Kratzenberg claims that he was deprived of his rights under Article 23 of the New Hampshire Constitution, which prohibits the retroactive application of the divorce statute.  Id. at ¶¶ 36-37.  Finally, in Count IV, Kratzenberg alleges that defendants "breached [their] contract to supply him appellate review services in exchange for [the] 'filing fee.'"  Id. at ¶ 39.  In his request for relief, plaintiff seeks a declaratory judgment, a permanent injunction, and compensatory damages in the form of a $450 refund of his appellate filing fee.  Id. at pg. 12.  Defendants argue that the court lacks subject matter jurisdiction over any of these claims under the Rooker-Feldman doctrine and, even if that doctrine does not

apply, the amended complaint should be dismissed because defendants are immune from suit. Doc. No. 19-1 at 5-10.

**DISCUSSION**

I.    **The Rooker-Feldman Doctrine**

A.  Nature and Scope of the Rooker-Feldman Doctrine

 "The Rooker-Feldman doctrine preserves the Supreme Court's exclusive jurisdiction over appeals from final state-court judgments by divesting lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court[.]" Klimowicz v. Deutsche Bank Nat'l Trust Co., 907 F.3d 61, 64 (1st Cir. 2018) (internal quotations and citations omitted). The doctrine applies "where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 23-24 (1st Cir. 2005) (quoting Exxon Mobil  Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)). Thus, "if federal litigation is initiated *after* state proceedings have ended, and the plaintiff implicitly or explicitly seek[s] review and rejection of [the state] judgment, then a federal suit seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts, and, under *Rooker-Feldman*, the federal courts lack jurisdiction." Id. at 24 (emphasis and alterations in original) (internal quotations and citation omitted).

"[A] federal court's application of the Rooker-Feldman doctrine is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit." Klimowicz, 907 F.3d at 66. Therefore, "a plaintiff cannot escape the Rooker-Feldman bar through the simple expedient of introducing a new legal theory in

the federal forum that was not broached in the state courts." Id.   On the other hand, "the Rooker-Feldman doctrine does not bar a 'general attack on the constitutionality' of a state law that 'do[es] not require review of a judicial decision in a particular case.'" Tyler v. Sup. Jud. Ct. of Mass., 914 F.3d 47, 51 (1st Cir. 2019) (alteration in original) (quoting D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 487 (1983)).  As long as the "federal plaintiff presents an independent claim" that is not "directed towards undoing the prior state judgment[,]" the doctrine presents no impediment to the court's subject matter jurisdiction.  Id. (quotations and citations omitted).

     In the instant case, defendants contend that Rooker-Feldman precludes subject matter jurisdiction over any of Kratzenberg's claims because "[t]he Plaintiff lost in the underlying post-divorce domestics relations matter, and all of his alleged injuries stem from the [state court's] decision relative to his alimony obligation[.]"  Doc. No. 19-1 at pg. 6 (internal citation omitted). Kratzenberg disagrees, and argues that he is "NOT appealing any judgment from a NH district court or from a judgment by the [NHSC]."  Doc. No. 24 at pg. 1 (emphasis in original).  Rather, according to plaintiff, his case constitutes an "original proceeding" in which he challenges defendants' enforcement of administrative rules that denied him an equal opportunity to obtain appellate services from the NHSP, the retroactive application of New Hampshire's current divorce statute in his divorce proceedings, the constitutionality of the divorce statute under the United States and New Hampshire Constitutions, and defendants' failure to refund his appellate filing fee. See id. at pgs. 1-2.  It is undisputed that plaintiff was the losing party in his state court domestic relations proceedings and that he did not file the present action until after the state proceedings ended.  At issue is whether, by his claims, Kratzenberg "implicitly or explicitly 'seek[s] review

and rejection'" of the state court's judgment.  Federación de Maestros de P.R., 410 F.3d at 24

(alteration in original) (quoting Exxon Mobil, 544 U.S. at 291).

    B.  Application of the Doctrine to Kratzenberg's Claims

        i.  *Counts II and III*

This court concludes that two of Kratzenberg's claims – Counts II and III – fall easily

within the scope of the Rooker-Feldman doctrine.  In Count II, Kratzenberg alleges that "the

enforcement of RSA 458 ('NH Divorce Statute') against him by [the] NH Court System and the

Defendants constitutes an unconstitutional 'taking' of his land and treasure by the state without

providing him any benefit from the said loss" and "violates his constitutionally protected contract

rights."  Doc. No. 15 at ¶ 32.  He further alleges that "[t]he NH Constitution protects his

constitutional right not to have the current version of the Divorce Statute retroactively enforced

against him in obtaining his divorce from his former spouse[,]" and that the Divorce Court's

application of the statute in his domestic relations proceedings violated his constitutional rights to

due process and equal protection.  Id. at ¶ 34.  In essence, therefore, Kratzenberg claims that the

Divorce Court's judgment against him was unconstitutional under both state and federal law.

Under the Rooker-Feldman doctrine, such a collateral attack on a state court's decision is not

reviewable in federal court.  See D'Angelo v. New Hampshire Sup. Ct., No. 12-cv-411-SM, 2012

WL 6647807, at *2 (D.N.H. Dec. 20, 2012) (concluding that the Rooker-Feldman doctrine

deprived the federal court of jurisdiction over plaintiff's "efforts to collaterally attack various

decisions of the state courts as 'unlawful' or 'unconstitutional'"), aff'd, 740 F.3d 802 (1st Cir.

2014).  Accordingly, Count II of the Complaint should be dismissed.

Count III of the Complaint involves a similar challenge to the constitutionality of the

Divorce Court's judgment in the underlying divorce proceedings.  In Count III, Kratzenberg

alleges that Article 23 of the New Hampshire Constitution "prohibits retroactive enforcement of the current version of the Divorce Statute against Kratzenberg in his seeking to terminate the marriage contract between him and his former spouse." Doc. No. 15 at ¶ 36. He further alleges that the Divorce Court's reliance on the current version of that statute in his divorce proceedings, rather than the version of the statute that was in effect at the time he entered into his marriage contract, violated his state constitutional rights. See id. at ¶ 37. As in Count II, therefore, Kratzenberg essentially challenges the constitutionality of the Divorce Court's judgment in his divorce proceedings, and asks this court to determine that the judgment was improper. "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." Tyler, 914 F.3d at 50 (quoting Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999)). Consequently, Count III should be dismissed as well.

Kratzenberg seeks to avoid application of the Rooker-Feldman doctrine by arguing that the relief he seeks is "prospective." See Doc. No. 24 at pg. 2 (describing his requests for declaratory and injunctive relief as prospective). Thus, he contends that his claims are aimed at protecting his rights in the future rather than attacking the state court rulings in connection with his divorce from his former spouse. See id. at pg. 4 (arguing that plaintiff has "standing" to challenge "the draconian terms and ruthless punishment imposed by the NH Divorce Statute" in order to protect himself from any potential requirement to "pay another million dollars if [he] and a future spouse agree to

have a no-fault divorce.").  This argument is insufficient to avoid application of the <u>Rooker-Feldman</u> doctrine.

In connection with his challenges to the New Hampshire divorce statute, Katzenberg seeks a declaratory judgment that:

the NH Divorce Statute is constitutionally infirm[ ] –

A.  In its requiring a citizen to provide a former spouse financial support beyond fulfilling emergency needs for shelter, food and other requirements.

B.  In being enforced against persons married before the adoption of its current version and only can be enforced against persons by an earlier version[ ] that was current on the date when persons entered into their marriage contract.

Doc. No. 15 at pg. 12.  As described in Counts II and III, however, Kratzenberg's request for such relief is premised upon his challenges to the Divorce Court's judgment against him.  Specifically, in Count II, Kratzenberg asserts that the divorce statute is unconstitutional because "the enforcement of [that statute] against him" in his divorce proceedings resulted in "an unconstitutional 'taking' of his land and treasure[,]" and because the Divorce Court applied it "retroactively" in connection with "his divorce from his former spouse." <u>Id.</u> at ¶¶ 32, 34.  In Count III, Kratzenberg contends that the Divorce Court violated his rights under the New Hampshire Constitution by relying on the current version of the state's divorce statute to determine plaintiff's alimony obligations.  <u>See</u> <u>id.</u> at ¶¶ 36-37.  Because Kratzenberg "complain[s] of an injury caused by the state-court judgment and seek[s] review and rejection of that judgment[,]" <u>Rooker-Feldman</u> bars jurisdiction over those Counts of his Complaint.  <u>See</u> Federación de Maestros de P.R., 410 F.3d at 23-24.

ii.  *Counts I and IV*

Application of the <u>Rooker-Feldman</u> doctrine warrants a different conclusion with respect to Counts I and IV of Kratzenberg's Complaint.  In Count I, Kratzenberg alleges that he had a

11

constitutional right to petition the NHSC for review of the Divorce Court's judgment with respect to his alimony payments, and that defendants' adoption of NHSC Rules 3 and 7 deprive pro se litigants of their First Amendment right to petition the courts because these Rules discriminate against pro se petitioners seeking appellate review of their claims by the NHSC.  See Doc. No. 15 at ¶¶ 21-23 and 25-29.  Relevant case law suggests that the question whether the Rooker-Feldman doctrine deprives the court of subject matter jurisdiction over this claim "is open to some debate."  See D'Angelo, 2012 WL 6647807, at *3 (assessing whether Rooker-Feldman precludes subject matter jurisdiction over plaintiff's claim that the NHSC violated his constitutional rights by declining to grant his notice of appeal from family court judgment on his child support obligations and finding it "arguable that the court has jurisdiction over [plaintiff's] constitutional challenge to [NHSC] Rule 3").  This court concludes that Rooker-Feldman does not bar Count I, but only insofar as the resolution of Kratzenberg's claim will not require this court to review the validity of a state court decision.

To the extent Count I purports to challenge the NHSC's decision to deny Kratzenberg's appeal under the NHSC Rules, it constitutes an attack on a state court decision.  See Vajk v. Young, No. 2:16-cv-129, 2016 WL 10607166, at *2 (W.D. Mich. June 28, 2016) (finding that plaintiff was "clearly attacking the state court judgment" by arguing that appeals court acted improperly when it relied on an allegedly unconstitutional court rule to dismiss his case).  Accordingly, Rooker-Feldman precludes this court from considering any such claim.  See id.  However, to the extent Count I challenges defendants' adoption of Rules 3 and 7, and the impact of those Rules upon pro se litigants, resolution of that claim will "not . . . require the court to review the validity of the state court decisions referenced in [Kratzenberg's] complaint."  D'Angelo, 2012 WL 6647807, at *3.

Accordingly, the <u>Rooker-Feldman</u> doctrine is inapplicable to Kratzenberg's claim, asserted in Count I, that defendants' adoption of NHSC Rules 3 and 7 was unconstitutional.

Finally, in Count IV of his Complaint, Kratzenberg claims that defendants "breached [their] contract to supply him appellate review services in exchange for [the] 'filing fee[,]'" and he requests compensatory damages in the amount of the filing fee. Doc. No. 15 at ¶ 39 and pg. 12. Nothing in Count IV invites this court "to review and reverse" a state court judgment or otherwise challenges such a judgment. See <u>Federación de Maestros de P.R.,</u> 410 F.3d at 20 (citations omitted). Therefore, the <u>Rooker-Feldman</u> doctrine does not deprive the court of subject matter jurisdiction over this claim.

## II.    <u>Defendants' Claim of Immunity</u>

Defendants argue that even if the court has subject matter jurisdiction over Kratzenberg's claims, those claims are barred by the doctrines of sovereign and absolute judicial immunity. Doc. No. 19-1 at 7-10. Accordingly, this court must decide whether the remaining claims in Counts I and IV should be dismissed on the basis of immunity.[3] Those claims consist of Kratzenberg's constitutional challenges to NHSC Rules 3 and 7 (Count I) and his claim for breach of contract (Count IV).

### A.  <u>Sovereign Immunity</u>

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

---

[3] Because this court recommends that Counts II and III be dismissed for lack of subject matter jurisdiction under the <u>Rooker-Feldman</u> doctrine, it is unnecessary at this time to address whether defendants are entitled to immunity with respect to those Counts. Accordingly, this court's analysis of defendants' claims of immunity are confined to Counts I and IV of the Complaint.

Const. amend. XI. "The Supreme Court has held that the doctrine of sovereign immunity reaches beyond the words of the Eleventh Amendment, extending immunity to state governments in suits not only by citizens of another state, but by its own citizens as well." Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 477 (1st Cir. 2009). Thus, "[u]nless an exception applies, the Eleventh Amendment precludes suits against states by private individuals in federal court." Doe v. Meyers, No. 18-1039-JD, 2019 WL 4060068, at *2 (D.N.H. Aug. 28, 2019) (citing Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001)). "A state court is a state entity for purposes of the Eleventh Amendment." Id. (and cases cited). Eleventh Amendment immunity also applies to state officials acting in their official capacities. Davidson v. Howe, 749 F.3d 21, 27 (1st Cir. 2014). In the absence of an exception, therefore, Eleventh Amendment immunity bars Kratzenberg's claims against the NHSC and the Chief Justice in his official capacity.

Citing the Supreme Court's decision in Ex parte Young, 209 U.S. 123 (1908), Kratzenberg argues that defendants are not entitled to sovereign immunity because he is "only seeking prospective injunctive relief against [the NHSC's] chief administrator to enjoin [him] from enforcing constitutionally infirm[ ] and otherwise illegal policies." Doc. No. 24 at pg. 6 & n. 3. "[T]he *Ex Parte Young* doctrine permits suits to proceed against state officers in their official capacities to compel them to comply with federal law." Irizarry, 587 F.3d at 477-78. It is based on the notion "that, since a state could not authorize an official to violate federal law, by doing so, a state official is stripped of her authority and thus a suit against her does not implicate the state's sovereign immunity." Id. at 478. "Thus, under Ex parte Young, the Eleventh Amendment permits federal courts to issue prospective relief that enjoins state officials from committing future violations of federal law, but not retrospective relief that 'make[s] reparation for the past.'" Cotto v. Campbell, 126 F.4th 761, 767 (1st Cir. 2025) (alteration in original) (quoting Edelman v. Jordan,

415 U.S. 651, 664-65 (1974)).  Specifically, the Ex parte Young exception to Eleventh Amendment immunity "applies if a plaintiff (1) 'alleges an ongoing violation of federal law' by a state official and (2) 'seeks relief properly characterized as prospective.'"  Id. (footnote omitted) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)).

Count IV of Kratzenberg's Complaint satisfies neither of these requirements.  As an initial matter, Count IV consists of a breach of contract claim that is based on state rather than federal law.  See Doc. No. 15 at ¶ 39.  Moreover, the claim arises from past harm that occurred in February 2024, when defendants declined to accept plaintiff's appeal in exchange for his payment of a filing fee.  See id.; Doc. No. 19-2.  Further, in connection with Count IV, Kratzenberg seeks compensatory damages that cannot be deemed prospective.  See id. at pg. 12 (seeking refund from the NHSC to compensate plaintiff for the cost of seeking an appeal).  Therefore, Count IV should be dismissed to the extent it is asserted against the NHSC and the Chief Justice in his official capacity.

In Count I, Kratzenberg alleges a violation of federal law.  See id. at ¶¶ 21-22, 26-27 (alleging violations of First Amendment right to petition the courts).  He also alleges that NHSC Rules 3 and 7 result in ongoing constitutional violations that "bifurcate[ ] the [p]ublic into two separate categories for appellate review and then for arbitrary and capricious reasons discriminate[] against one of these categories by denying them its appellate review services."  Id. at ¶ 26.  Additionally, as Kratzenberg argues, he seeks prospective relief in the form of an injunction that requires defendants to offer "all members of the [p]ublic an equal opportunity to petition the NHSC for appellate review."[4] Id. at pg. 12.  Because the Ex parte Young exception to

---

[4] In his Prayer for Relief, Kratzenberg states that he seeks "an Order permanently enjoining Defendants from offering all members of the Public an equal opportunity to petition the NHSC for appellate review."  Doc. No. 15 at pg. 12.  However, it is clear from his Complaint that he means

sovereign immunity does not apply to state entities such as a state court, see Irizarry, 587 F.3d at 477-78 (explaining that sovereign immunity precludes suits against entities that constitute an "arm of the state" but that "the *Ex Parte Young* doctrine permits suits to proceed against state officers in their official capacities"), the NHSC is entitled to dismissal of Count I.    However, sovereign immunity does not preclude Kratzenberg from pursuing this claim against the Chief Justice in his official capacity.

### B. Absolute Judicial Immunity

Defendants' final argument is that the Complaint "must also be dismissed for failure to state a claim because the Plaintiff's claims are barred by the well-settled doctrine of absolute judicial immunity." Doc. No. 19-1 at pg. 9.  Kratzenberg disputes this argument and contends that defendants are not entitled to such immunity because he is "only challenging their future enforcement of unconstitutional administrative policies that lie outside the bounds of their constitutional authority." Doc. No. 24 at pg. 6.  In light of the recommendations described above, this court confines its consideration of these arguments to their impact on the remaining claims set forth in Count I against the Chief Justice in his official and individual capacities and Count IV against the Chief Justice in his individual capacity.

### i.    *Scope of the absolute judicial immunity doctrine*

The Supreme Court has long held that "judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." Sup. Ct. of Va. v. Consumers Union of United States, Inc., 446 U.S. 719, 734-35 (1980).  "The breadth of the protection is fulsome, shielding judges even when their actions are malicious, corrupt,

---

to request an injunction that requires defendants to offer all members of the public an equal opportunity to petition the NHSC for appellate review.

mistaken, or taken in bad faith[.]"  Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019).

"[I]mmunity is overcome only in cases where a judge is carrying out a nonjudicial action, or in

instances where a judge takes an action, though seemingly 'judicial in nature,' that is 'in the

complete absence of all jurisdiction.'"  Id. at 617 (quoting Mireles v. Waco, 502 U.S. 9, 11-12

(1991) (per curiam)).

 "To determine if a judge is entitled to the full protection of the doctrine's deflector shield,"

courts must assess "whether the judge's act was one normally performed by a judge and whether

the parties were dealing with the judge in his or her judicial capacity."  Id. (citing Stump v.

Sparkman, 435 U.S. 349, 362 (1978)).  "[T]he relevant inquiry" in determining whether judicial

immunity attaches "is the nature and function of the [challenged] act, not the act itself."  Id.

(internal quotation marks omitted) (quoting Mireles, 502 U.S. at 13).  "Administrative decisions,

even though they may be essential to the very functioning of the courts, have not . . . been regarded

as judicial acts."  Forrester v. White, 484 U.S. 219, 228 (1988).  Similarly, judicial immunity does

not attach to judges acting in a legislative capacity, although absolute legislative immunity may

bar suits against judges engaged in rulemaking activity.  See id. (explaining that "legislative, rather

than judicial, immunity" attaches where a judge engages in rulemaking rather than adjudication).

On the other hand, judicial immunity does apply where the decisions or acts at issue can be deemed

"judicial or adjudicative."  See id. at 229.

   ii. *Whether absolute judicial immunity applies to the remaining claims*

 A state judge's decision to deny a litigant's petition for the allowance of an appeal

constitutes an action taken in the judge's judicial capacity.  See Span v. Flaherty, 135 F. App'x 525,

526 (3d Cir. 2005) (ruling that complaint alleging constitutional violations based on state Supreme

Court Justices' denial of plaintiff's petition for allowance of appeal "consist[ed] entirely of

17

allegations regarding the actions taken by the defendants in their judicial capacity."). To the extent Kratzenberg seeks to hold the Chief Justice liable in Count I for denying his appeal under the NHSC Rules, there can be no serious question that the Chief Justice was acting in his judicial capacity and carrying out a judicial function. Accordingly, the Chief Justice is entitled to absolute judicial immunity for this conduct.

Kratzenberg argues that absolute judicial immunity cannot attach because he is challenging only the future enforcement of defendants' policies. Doc. No. 24 at pg. 6. However, a claim challenging defendants' denial of his appeal implicates only past conduct. To the extent Count I encompasses a claim against the Chief Justice based on the denial of Kratzenberg's appeal, this court recommends that it be dismissed.

To the extent Kratzenberg seeks to hold the Chief Justice liable in Count I for the adoption of NHSC Rules 3 and 7, this court finds the doctrine of absolute judicial immunity inapplicable to this claim. Part II, article 73-a of the New Hampshire Constitution delegates authority to the Chief Justice of the NHSC, "'with the concurrence of a majority of the supreme court justices,'" to "'make rules governing . . . the practice and procedure to be followed' in all courts in the State." In re Proposed N.H. Rules of Civil Proc. (Petition of N.H. Bar Ass'n), 139 N.H. 512, 513 (1995) (quoting N.H. Const. pt. II, art. 73-a). Adopting the NHSC Rules was therefore a proper function of the Chief Justice under New Hampshire law. However, "propounding the [Rules] was not an act of adjudication but one of rulemaking." Forrester, 484 U.S. at 228 (quoting Consumers Union,

446 U.S. at 731).  Judicial immunity does not extend to such actions.  See id. ("judicial immunity has not been extended to judges acting to promulgate a code of conduct for attorneys.").

Although judicial immunity is not available to bar this claim, as defendants argue, "legislative immunity surely is."  Doc. No. 19-1 at pg. 10 n.5.  Defendants maintain that the Chief Justice is immune from suit based on his role in promulgating the NHSC Rules.  This court agrees.

In Consumers Union, the Supreme Court held that legislative immunity extends to judges who engage in rulemaking.  Consumers Union, 446 U.S. at 731-34 (explaining that promulgation of code of conduct for attorneys by state court was an act of rulemaking for which the court and its members were entitled to legislative immunity).  It also explained that legislative immunity protects such judges from actions for damages, as well as actions for prospective relief.  See id. (describing scope of legislative immunity that applied to state court and its members).  Under the relevant authority, therefore, the NHSC and its members are absolutely immune from suit based on actions they took in their legislative capacity to promulgate the NHSC Rules, and defendants' motion to dismiss Count I of Kratzenberg's Complaint should be granted in its entirety.

Kratzenberg's final remaining claim, which is set forth in Count IV of the Complaint, alleges that the Chief Justice, acting in his individual capacity, "breached [a] contract to supply him appellate review services in exchange for [the] 'filing fee.'"[5]  Doc. No. 15 at ¶ 39.  For the reasons that follow, this court recommends that this claim be dismissed as well.

"Federal courts have [original] jurisdiction over two general types of cases: cases that aris[e] under federal law and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties."  Industria Lechera de P.R., Inc. v. Beiró, 989 F.3d

---

[5] This court's description of Kratzenberg's breach of contract claim against the Chief Justice constitutes a generous reading of Count IV, as Kratzenberg alleges no specific facts against the Chief Justice individually.

116, 120 (1st Cir. 2021) (second alteration in original) (quotations and citations omitted). Because this case is based only on federal question jurisdiction, see Doc. No. 15 at ¶ 19, Kratzenberg's state law claims, including Count IV, are before this court "solely as a result of the district court's exercise of supplemental jurisdiction." Zell v. Ricci, 957 F.3d 1, 15 (1st Cir. 2020). The First Circuit has held that "when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve the interests of fairness, judicial economy, convenience, and comity." Id. (internal quotation marks omitted) (quoting Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Borrás Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 37 (1st Cir. 2020) (alteration in original) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

This case is still in its early stages. The pleadings have not yet closed and no discovery plan is in place. Moreover, the question whether plaintiff's claims can proceed at all must await a final determination by the district judge on the pending motion to dismiss. The proper course under these circumstances is for the court to decline to exercise supplemental jurisdiction over the claim against the Chief Justice for breach of contract. Therefore, this court recommends that Count IV be dismissed.

**CONCLUSION**

For all the reasons detailed herein, this court recommends that the district judge grant defendants' Motion to Dismiss Amended Complaint (Doc. No. 19). Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. The

fourteen-day period may be extended upon motion.  Failure to file any objection within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).  Only those issues raised in the objection(s) to this Report and Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on appeal."  Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988)).

Talesha L. Saint-Marc
United States Magistrate Judge

April 30, 2025


cc:    Eric Kratzenberg, pro se
       Counsel of record